JACKSON, ex dem. Daniel Anderson *vs.* SAMUEL ANDERSON.

A sheriff has no right to sell the property of a defendant in an execution for
the purpose of *collecting his fees*, after notice of satisfaction of the judg-
ment ; he must look to the plaintiff or his attorney for them.

*It seems*, however, that a sheriff would be permitted to sell in case of collu-
sion between the parties, and where the plaintiff and his attorney are irre-
sponsible.

A sale of the property of a defendant by virtue of a judgment and execu-
tion which is satisfied, the purchaser having full knowledge of the fact,
*it seems* would be considered a nullity, although the defendant assented to
the proceeding.

At all events, the *assent* of a defendant in an execution that *an agent of the
plaintiff* (between whom and the defendant many equities existed) might
become a purchaser at a sheriff's sale, does not render valid a sale and
purchase by a third person.

A turnkey or assistant jailer is not within the operation of the act forbid-
ding sheriffs and their deputies from becoming purchasers on sales under
executions.

A *bona fide* purchaser from a fraudulent grantee, or a grantee with notice
is under certain circumstances, protected ; but a purchaser under a power
purchases at his peril ; if there be no subsisting power or authority to sell
no title is acquired.

Whether a sheriff's deed of lands is void on account of adverse possession at
the time of the sale ? *Quere.*

The declarations or admissions of a party shewing title out of himself or in
the lessor of the plaintiff in an action of ejectment, are inadmissible in ev-
idence to divest him of his legal estate, where there is no proof of a tenan-
cy by the party in support of which the declarations can be applied, or
where there is no title shewn in the party in whose favor the admissions
are made, independent of such declarations.

The return to the grantor or destruction of a deed of lands, will not revest
the grantor with the title ; a title to lands can be transferred only by deed.

A variance in the amount of recovery between an execution and the judg-
ment on which it issues, will not affect the sale, the execution being
amendable as well after as before the sale.

This was an action of ejectment tried at the Erie circuit
in September, 1828, before the Hon. JOHN BIRDSALL, then
one of the circuit judges.

Samuel Anderson was the owner of a lot of land of 146 acres in the town of Clarence. On the 2d January, 1819, being indebted to Daniel Anderson, he executed to him a bond in the penal sum of $3000, conditioned for the payment of $1500, accompanied by a warrant of attorney, authorizing the confession of a judgment; by virtue of which a judgment was entered on the 12th January, 1819, and on the 28th of the same month a *fieri facias* was issued on the judgment, delivered to the sheriff of Niagara, commanding him to levy $1500 debt and $17,75 costs, besides his fees, &c. but the sheriff at the same time was directed not to expose the property of the defendant to sale until further orders. On the 24th April, 1819, Samuel Anderson executed to the plaintiff a deed of 96 acres of land, part of his farm in the town of Clarence, in satisfaction and payment of the judgment, and the plaintiff released and discharged him from the judgment, *except the sheriff's fees on the execution,* of which transaction notice was given to the sheriff, (as was charged in a bill in chancery, filed by Samuel Anderson, and which was produced on the trial of this cause by the defendant.) After notice was thus given, the sheriff (as was also charged in the bill (by an arrangement with one Samuel T. Conkey, an assistant of the jailer of the county of Niagara, on the 10th December, 1819, sold the farm of the plaintiff to Conkey for the sum of $35, and executed to him a deed thereof. The plaintiff in the bill further charged, that the sale was had without his orders or knowledge, and that Conkey, the purchaser, knew at the time of the sale that the judgment and execution were fully paid and satisfied. Conkey brought an action of ejectment against both Daniel Anderson and Samuel Anderson for the recovery of the farm, obtained judgment and was put into the possession of the premises in the fall of 1822. Samuel Anderson was turned out of possession, but took possession again within four or five days, and has ever since remained in possession.

On the 30th June, 1823, Sheldon Chapin and others obtained a judgment against Samuel Conkey for $1200 debt and $10 costs, on which an execution issued and the farm, (bought in by him on 10th December, 1819,) sold to one

Hiram Johnson. In 1824, another judgment was obtained against Conkey, in favor of John G. Camp for $319,81, on which the same premises were sold in May, 1826, to one Jacob A. Barker. At the time of the purchases by Johnson and Barker, it was known to them that Samuel Anderson was in possession of the premises claiming title.

After the purchase of the farm by Conkey, Samuel Anderson executed to Daniel Anderson a *quit-claim* deed of the 96 acres of land, conveyed by Daniel to Samuel in 1819, which deed it seems was executed for the purpose of enabling Daniel to prosecute a suit in chancery against Conkey, to avoid the sale of the premises to him, Samuel being under the impression that a suit could not be prosecuted in his own name. In 1823, this quit-claim deed was returned by Daniel to Samuel, and re-delivered to him, but no re-conveyance was executed. In 1826, Samuel Anderson bought in the titles of Johnson and Barker to the premises in question, acquired under the judgments against Conkey; Daniel Anderson was present and assented to such purchase by Samuel Anderson, and became surety for the purchase money, which was about $600, and a few days after the purchase told a witness, one St. John, that "Daniel had now got a good title for the farm, that it was hard for him, for he had been obliged to pay in the whole more than the farm was worth, but that he had now bought Camp and Chapin's titles and got the business all arranged." It appeared that Johnson and Barker acted in the purchases by them, only as the agents of Camp and Chapin.

To shew his right to recover, the plaintiff on the trial of the cause produced, 1. The deed from the defendant to him of 96 acres, dated 24th April, 1819: 2. The judgment in his favor against the defendant, docketed 15th January, 1819, and the execution issued thereon, (there was a variance between the judgment and execution as to the amount of costs, which in the judgment were stated at $14,44, and in the execution at $  5, for this cause the admission of the execution in evidence was objected to, but the objection was overruled;) 3. The sheriff's deed by virtue of the preceding judgment and execution to Samuel T. Conkey; 4. The record of the recovery in ejectment in favor of Conkey

against the plaintiff and defendant in this cause ; 5. The judgments and executions in favor of Camp and Chapin against Conkey, and the sheriff's deeds by virtue of sales under the same to Johnson and Barker; and 6. The conveyances from Johnson and Barker to the lessor of the plaintiff. The evidence of the admissions of the defendant to St. John was objected to as incompetent, but received by the judge. It was proved, that at the time of the sale of the premises in question under the execution of the plaintiff, the defendant consented that the premises might be struck off to the son of the plaintiff as the plaintiff's agent. This evidence was also objected to, but received by the judge. A verdict was rendered for the plaintiff for the whole farm, subject to the opinion of this court on a case made containing the above facts.

<div style="text-align: right">NEW-YORK,<br>May, 1830.</div>

<div style="text-align: right">Jackson<br>v.<br>Anderson.</div>

*S. Smith & J. A. Spencer*, for plaintiff. The execution was not void, but voidable only ; it may be amended and the purchaser protected. (4 Johns. R. 143. 5 id. 98. 2 T. R. 737.) The averments in the bill in chancery produced by the defendant, supply the proof wanting and cured all defects. As to the quit-claim of the 96 acres, the transaction was imperfect, the title was not perfected, the deed was executed for a specific object, and was not accepted by the defendant, but returned by him and must be considered as cancelled. The acts and declarations of the defendant while in possession of the premises recognizing the plaintiff's title are good evidence against the defendant, shewing the nature of his tenancy. (4 Johns. R. 230. 2 T. R. 43; 1 Esp. C. 458.)

*H. White & D. Cady*, for defendant. The law will presume a consideration for the deed from Daniel to Samuel Anderson, and the more so as the plaintiff who had it in his possession neglected to produce it on the trial. There was no title shewn under the judgment against the defendant. The execution under which the sale was had did not correspond with the judgment ; and though it may be amendable, it does not now correspond with the judgment. A judgment must be shewn under which the sale is had ; (1 Starkie's Ev. 283; 12 Johns. R. 213;) and the defect in the proof cannot be supplied by the bill in chancery or other extrinsic

evidence; the identity must appear by the judgment and ex-·
ecution. The judgment was satisfied, and no sale could be
had under it. It was an abuse in the sheriff to sell 146 acres
of land for his fees. The sale to Conkey was void, he being
an officer of the sheriff; and though not within the letter,
within the spirit of the act, (1 R. L. 506.) The purchases
by Johnson and Barker were void, the defendant being in
possession holding adversely. (3 Johns. Cas. 111. 9 Johns.
R. 55; 5 id 489.) So also the deeds from them to the les-
sor of the plaintiff are inoperative, the grantors not being at
the time in possession. The declarations of the defendant
as to the title of the lessor were inadmissible. Such decla-
rations cannot shew a title either in or out of a party. (7
Johns. R. 186. 16 id. 302. 6 Cowen, 751.) Besides, from
the whole evidence it is fairly inferrible that the lessor of the
plaintiff bought in the titles he acquired for the benefit of the
defendant.

    *J. A. Spencer* was heard in reply.

    *By the Court*, SUTHERLAND, J. The execution in favor
of Daniel against Samuel Anderson, which was objected to
by the defendant, corresponded with the judgment in all re-
spects except the amount of the costs. The costs in the judg-
ment were $14,44, and in the execution they were stated
at $17,75. The judgment was entered up, upon bond and
warrant of attorney, and the variance was occasioned un-
doubtedly by the costs of the defendant having been added
to the plaintiff's cost: and inserted in the execution, where-
as the direction to collect them should only have been en-
dorsed on the back of the writ. That the execution was in-
sued upon this judgment there can be no question; and if
any doubt could exist upon the bare production of the record
and the execution, it is entirely removed by the bill in chan-
cery introduced and made evidence by the defendant, in
which the judgment and execution are set forth, and in which
it is expressly alleged that the execution was issued on the
said judgment. The validity of the execution was not af-
fected by the variance. It was amendable at any time, as
well after as before the sale. (*Bissell* v. *Kip*, 5 Johns. Rep.

89. 2 Dunlap, 774, and cases there cited.) The execution therefore was properly received in evidence.

2. The next inquiry is as to the validity of the title acquired by Samuel T. Conkey, under the sale upon this execution. It is impeached upon two grounds : 1. Because the judgment on which the execution was issued had been paid and satisfied before the sale ; and 2. Because Conkey, the purchaser, was at the time of the purchase under-jailer to the sheriff. It is not denied that the judgment was satisfied before the sale, (*except as to the sheriff's fees on the execution,*) by a settlement between the parties, and by a conveyance in fee from the defendant to the plaintiff in the execution, of a part of the premises on which it had been levied ; nor is it denied that the sheriff and Conkey, the purchaser, both had notice of the satisfaction of the judgment before the sale took place. The evidence upon this subject is principally contained in a bill in chancery filed by the lessor of the plaintiff against the sheriff and Conkey, in which the facts are distinctly stated. One object of the bill was to restrain Conkey from issuing a writ of possession upon a judgment in ejectment which he had recovered, for the premises purchased by him. The bill states, in terms, that the sheriff had express information of the settlement and discharge of the judgment and execution ; that he sold the premises without the knowledge or direction of the plaintiff; and that Conkey, at the time of the sale and conveyance to him, knew that the judgment and execution were fully paid, satisfied and discharged, and that the sheriff had no order and directions from the plaintiff or his attorney to sell the premises. It was an *injunction bill,* and *duly sworn to by the* plaintiff. It was introduced by the defendant, and certainly was competent evidence for him. The sheriff had no right to sell, for the purpose of collecting his fees, after due notice of the settlement and discharge of the judgment. The sheriff has no interest in the judgment, which will authorize him to interfere with or control any settlement or arrangement which the parties may think proper to make. His fees are no part of the judgment. They are but an incident to it : and if the judgment itself is satisfied or discharged, he

NEW-YORK,
May, 1830.

Jackson
v.
Anderson.

NEW-YORK,
May, 1830.

Jackson
v.
Anderson.

must look to the plaintiff and his attorney for his fees. He cannot collect them from the defendant by a sale of his property. An execution may at any time be countermanded by the attorney who issued it, and the sheriff is bound to obey his instructions and suspend proceedings upon the execution whenever he is directed so to do, unless it be a case of collusion between the parties for the obvious purpose of defrauding the sheriff out of the fees, the plaintiff and his attorney both being insolvent or irresponsible.

The assent of Samuel Anderson, the defendant in the execution and also the defendant in this suit, to the sale, admitting the evidence of such assent to be competent, does not, I think, vary its legal effect and operation. It may be remarked, in the first place, that it is not pretended that he consented to the sale in general terms. The extent of his assent was, that the farm might be bid off by *the agent of Daniel Anderson.* It was not purchased by Daniel Anderson, nor for his benefit; and the defendant, I apprehend, is not estopped from raising any legal objection to the title of any other purchaser at such sale. The fact that Daniel Anderson subsequently acquired a title under the purchaser, will not enable him to set up the special consent of Samuel to the sale, by way of estoppel against him. It may well be questioned whether a sale made upon a judgment and execution which have been satisfied, though with the full assent of the plaintiff and defendant, if the purchaser have knowledge of all the facts, is not an absolute nullity, leaving the title to the property precisely as it stood before the sale. The consent of parties will not revive an extinguished judgment, *or give life and efficacy to an execution which has been* satisfied. It is not necessary, however, to determine what would be the effect of such a transaction. It does not appear that Samuel Anderson, the defendant, was present at the sale; and he consented, at most, that Daniel Anderson might bid in the premises. Conkey, therefore, acquired no title by his purchase at the sheriff's sale, having purchased with full knowledge that the judgment and execution had been previously satisfied and discharged; and the defendant is not estopped from contesting his title. (*Sherman* v. *Boyce,*

15 Johns. R. 443. *Reed* v. *Pruyn & Staats*, 7 id. 426. *Jack-* NEW-YORK,
*son* v. *Cadwell*, 1 Cowen, 622, *and the cases there cited by the* May. 1830.
*counsel and the court,* *Jackson* v. *Bowen & Neff*, 7 Cowen,
1. 1 Johns. Cas. 154. 16 Johns. R. 571. 9 Mass. R. 142.
16 id. 63.)

Jackson
v.
Anderson.

2. Samuel T. Conkey was assistant jailer under David
S. Conkey, his brother, who was under sheriff and jailer.
The 16th section of the act, concerning judgments and
executions, (1 R. L. 506,) provides that it shall not be
lawful for any sheriff, or other officer to whom any execution
shall be directed, or *any of their deputies*, or any person for
them or either of them, to purchase any goods or chattels,
lands or tenements, at any sale, by virtue of any execution;
and all purchases so made by them are declared to be void.
An under jailer or turnkey, I am inclined to think, is not a
deputy within the meaning of this act. He is a mere servant
of the jailer, and can have no official control or agency in
the execution of any process directed to the sheriff.

3. If Samuel T. Conkey acquired no title to the premises in
question under the sheriff's sale and deed of December 16th,
1819, then the purchasers under the judgments subsequently
obtained against him acquired no title or interest by virtue of
their purchases.

Conkey never was in possession of the premises except for
a few days, and that was in 1822. Samuel Anderson was in
possession when Conkey purchased, and has remained in
possession ever since. The judgment of Chapin and others
against Conkey was obtained in June, 1823, and that of
Camp against Conkey in May, 1824. Hiram Johnson was the
purchaser under the first judgment and Jacob A. Barker un-
der the last; and they have respectively conveyed all their
title and interest to the lessor of the plaintiff. A purchaser
at sheriff's sale acquires only the interest of the defendant in
the execution. If he has no title, none passes by the sale
and the deed of the sheriff. The act concerning judgments
and executions, (1 R. L. 504, *s.* 11,) gives to bona fide pur-
chasers of land upon execution, who shall be evicted on ac-
count of any irregularity in the proceedings, *or want of title in
the person against whom such execution issued,* a remedy against

the plaintiff in the execution, who is entitled to further judgment and execution against the defendant therein.

Under the registry act and the statute against fraudulent conveyances, the bona fide purchaser from a fraudulent grantee, or a grantee with notice, is, under certain circumstances, protected. (*Roberts & Boyd* v. *Anderson*, 3 Johns. Ch. 371. Roberts on Fraud. Con. 382, et seq.) But a purchaser under a power purchases at his peril; if there was no subsisting power or authority to sell, no title is acquired.

It has already been remarked that Conkey never was in possession except for a few days; neither were Johnson and Barker, or either of them, ever in possession. The defendant has been in possession since 1822. Johnson and Barker purchased as the agents of Chapin and Camp, the plaintiffs in the execution; and Chapin and Camp both testify that they knew at the time of the sale that Samuel Anderson was in possession of the land claiming title. Johnson and Barker were also the mere agents of Chapin and Camp in conveying the premises to the lessor.

Whether the sheriff's deeds to Johnson and Barker were void on account of the adverse possession of the premises by Samuel Anderson at the time of the sale or not, it is not necessary to determine; for, admitting them to be valid, if the views which have already been expressed are sound, they conveyed no interest to the grantees.

The conveyances from Johnson and Barker to the lessor would undoubtedly have been void on account of the adverse holding of Samuel Anderson at the time, if it had not appeared, as it does distinctly in the case, that Samuel Anderson was present when the conveyances were executed, and made no objections to the sale, but joined in the securities given by Daniel Anderson for the purchase money. He is estopped by these acts from saying that the conveyances were void by reason of his adverse possession; but his declarations at that time, or subsequently, are inadmissible for the purpose of shewing title out of himself or in the lessor. (6 Johns. R. 22. 7 id. 186. 16 id. 302, 6 Johns. Ch. R. 166. 6 Cowen, 751.) His declaration to the witness St. John, "that Daniel Anderson had now got a good title for the farm,"

was admissible on that ground. There was no pretence or evidence of a tenancy on the part of Samuel under Daniel, in support of which these declarations could be applied. He undoubtedly supposed that Daniel had acquired a good title, but if he had not in fact, the admissions or opinions of Samuel, however frequently made or expressed, would not confer it. The evidence of St. John upon this point ought not to have been received.

4. The only remaining inquiry is, whether the title of the lessor to the 96 acres conveyed to him by the defendant on the 29th April, 1819, was extinguished by the release or quit claim deed for the same premises subsequently given by him to the defendant. That a quit claim deed was given to the defendant is clearly established by the testimony of several witnesses. It is also shewn that the deed was subsequently returned by the defendant to the lessor; but the return or destruction of the deed would not revest the grantor with the title. A title can be transferred only by deed. (2 Johns. R. 84. 9 id. 55. 12 id. 73, 488, 355. 2 H. Bl. 260. 4 Cruise, 497. 6 East, 86.) It is highly probable that there was no good or valuable consideration for the deed, and that in a court of equity, upon a disclosure of all the circumstances attending the transaction, the defendant would be compelled to re-convey the 96 acres to the lessor. But enough does not appear in this case to enable us to pronounce the deed void, and the legal title which it conveyed to the defendant was never re-conveyed to the lessor.

Upon the whole case, therefore, the defendant is entitled to judgment.