Dennison *v.* Ely.

ONONDAGA SPECIAL TERM.   November, 1847, *Gridley,* Justice.

DENNISON, adm'r, &c. *vs.* ELY and others.

In 1819, J., being the owner of two lots of land, executed a warranty deed thereof to D. E., which deed was recorded in Nov. 1840. The consideration expressed in this deed was an exchange of lands. D. E. continued to own and possess the lots for about 20 years after the conveyance thereof to him. In 1823, J. executed another warranty deed of the same lots to P. E., the wife of D. E.; which deed was recorded on the 2d of May, 1840. The consideration stated in this deed was an exchange of lands lying in Ohio, being part of the patrimonial estate of the grantee, and $100. The consent of D. E. to the giving of this conveyance to his wife, and his active agency in effecting it, appeared from the fact that the deed was in his hand-writing. The grantor in this deed covenanted to *warrant the premises against all persons* claiming under, by, or through himself, and against his own acts. On the 22d of May, 1840, D. E. conveyed the same land to his son W. M. E. And on the 9th of Sept. 1840, after the death of P. E., D. E., together with the several children of himself and P. E. his wife, executed to A. S. conveyances of the land, for the sum of $12,600; $6,600 of which was paid to the creditors of D. E. and the balance was secured by separate obligations to his children.

In 1842, after the death of J., D., the administrator of J., recovered a judgment against D. E.; and an execution having been issued upon that judgment, and returned unsatisfied, D. filed a creditor's bill against D. E., the judgment debtor, A. S., the purchaser of the land, and the children of D. E., charging therein that the deed executed by J. to P. E. conveyed no title to her, inasmuch as the same land had been previously conveyed to D. E., and was then held by him, under his deed, and praying that the land, in the hands of A. S. might be appropriated to the payment of the plaintiff's judgment; or that the amount of the notes given S. to the children of D. E., for the purchase money, might be appropriated purpose, and especially, that the part remaining unpaid of one of the notes

Dennison *v.* Ely.

given to a daughter of D. E., who died before the whole was paid, might be so applied:

*Held*, 1. That it was competent for J., the grantor, by the agreement and consent of D. E., to convey the same land to a third person, for a valuable consideration, which he had previously conveyed to D. E.

2. That D. E. consenting to, and aiding in, such new conveyance, would be estopped, in equity, from setting up his prior legal title against the defective title of the second grantee.

3. That the fair presumption was, that it was agreed between D. E. and J., that the lots should be deemed to be restored to J., and that the same should be conveyed to P. E.

4. That upon the same principle on which a court of equity would interfere to prevent D. E. from asserting his legal title, against a third person who had been induced by him to part with his money for the estate, it would protect the title of P. E., in her heirs, against her husband, and those claiming under him, if in truth her property formed the consideration of the conveyance to her, even if she had notice of her husband's prior deed.

5. That P. E. was to be regarded as a bona fide purchaser without notice.

6. That if A. S. purchased the premises, relying on the truth of the recital in the deed to P. E., that the latter had advanced the consideration out of her own property, the grantor would be estopped from denying it; upon the well settled principle relating to an estoppel *in pais*.

7. That J., and the plaintiff as his administrator, were estopped from alleging that the deed to P. E. conveyed no title to her, and from setting up a title as against her, derived under the prior deed to P. E.

8. That the case came within the general rule, that an executor or administrator can only maintain such claim as the testator or intestate might have successfully adopted while living.

9. That it must be assumed, as between the parties to the suit, that when A. S. purchased the farm, it was owned by the children and heirs of P. E., subject to the life estate of D. E. therein, as tenant by the curtesy.

10. That the plaintiff could not reach the land in the hands of A. S., by his creditor's bill, and have it appropriated to the payment of his judgment; nor the amount remaining unpaid upon the note held by the deceased daughter of D. E., at the time of her death.

Where a deed conveyed to the grantee the land therein described, in fee, together with all the estate, right, title, interest, claim and demand whatever of the grantor, either in law or equity of, in, and to the premises; *Held* that it was the intention of the grantor to convey the land, and that this clause was not to be regarded as a mere release or quit-claim, or as inserted with any purpose to *limit* the grant, but as used for greater caution, to embrace any claim or title, equitable as well as legal, which the grantor might have in the land.

The *habendum* clause, in a deed, may enlarge, abridge, or explain the premises.

The cancellation, or re-delivery, of a deed, with the view of re-investing the grantor with the title, will not have that effect.

How far recitals in a deed operate by way of estoppel.

Dennison *v.* Ely.

*It seems* that the grantor in a deed is estopped, by a recital therein of a specific consideration moving directly from the grantee, from denying that fact. But if such a recital does not estop the grantor, as to the fact recited, the evidence to controvert it should be of such a character as clearly to disprove it.

IN EQUITY. The bill in this case was a creditor's bill, filed by the plaintiff, as administrator with the will annexed of David Judson, deceased, against David Ely, the judgment debtor, and against the other defendants, to reach property of the debtor, alleged to be in their hands. It set forth the recovery of a judgment in the supreme court of this state, for the sum of $36,083,89, on the 19th day of December, 1842, and the issuing, and return of an execution unsatisfied, against the defendant David Ely. The bill then stated that Judson, the testator, executed to the said David Ely, a warranty deed of lots 32 and 40 in Brighton, Monroe county, on the 19th of August, 1819, which deed was recorded on the 18th day of November, 1840 ; and that Ely continued to own and possess this Brighton farm, for about 20 years after the conveyance of the same to him ; that after the execution of the said conveyance and on the 2d day of October, 1823, Priscilla Ely, the wife of the said David, obtained from the said David Judson another warranty deed of the farm, executed to herself, which was recorded on the 2d of May, 1840. This last deed was charged, in the bill, to have conveyed no title to Mrs. Ely, *inasmuch as the same land had been previously conveyed to David Ely, and was then held by him under the first mentioned deed.* The bill further showed that on the 22d of May, 1840, David Ely conveyed the same land to his son William M. Ely, and that afterwards, and on or about the 9th of September, 1840, David Ely, together with his several children who were also the children of the said Priscilla, (who had died many years before,) executed to Azariah Smith, conveyances of the farm for the entire consideration of $12,600 ; that $6,600 of this consideration was paid by discharging the debts of David Ely, and the remaining $6000 was secured by separate obligations, to the children of Mrs. Ely, in pursuance of a contract between the parties. All of these deeds of David Ely

and his children, were charged to be fraudulent and void against the testator, and against the plaintiff's judgment. And as evidence of the fraud, it was charged that the purchase by Smith, of the farm in question, was for much less than its actual value; that David Ely was insolvent at the time, and owing a large debt to the plaintiff's testator, which had been due many years; all which was well known to Smith. The bill claimed that the farm should be declared to be liable to be appropriated to the payment of the plaintiff's judgment, *or* that the amount of the outstanding notes to the children should be so appropriated, and especially that the part remaining unpaid, of one of the notes executed to a daughter of the said David and Priscilla Ely, who died before the whole was paid, should be paid towards the discharge of the judgment. The cause was heard on pleadings and proofs.

One ground of the defence relied upon by the defendants, rested upon the proposition that Priscilla Ely became the owner of the farm, by virtue of the conveyance to her, of the date of October 2d, 1823; and that the farm descended, on her death, to her children, subject to the life estate of David Ely, as tenant by the curtesy; and that Smith took the interests of all the parties, and paying to each heir such portion of the purchase price of the farm as was agreed upon; the heirs consenting that a much larger share than belonged to their father, should be paid and allowed in the discharge of his debts.

*E. Pearson & B. Davis Noxon,* for the plaintiff. I. The plaintiff is entitled, as against David Ely, to a decree for the amount of his judgment stated in the bill, and interest. The pretended settlement set up in the answer is not proved, but on the contrary is disproved. Besides; it should have been set up against the notes. II. The plaintiff is entitled to the Brighton farm, or the actual value of it. All the deduction the defendants can claim is the balance, after applying D. Ely's property to pay off bona fide liens on the farm older than the plaintiff's judgment. All the sales or liens made by the defendant Smith were not bona fide. D. Ely's deed was known to Smith. It was re-

corded prior to any such sales or liens. III. The entire amount of the defendant Smith's obligations to D. Ely's children, with interest, should be decreed to be paid to the plaintiff. Elizabeth's portion, with interest, belongs to her father, D. Ely. IV. The plaintiff is not estopped by the deed to Mrs. Ely. He sues as administrator; and is not proved to have assets. And the deed is void as to creditors, for fraud and want of consideration. The deed to Ely was a full covenant warranty deed, and all the interest subsequently acquired by the grantor enured to that title. The testator, at the time of the deed to Mrs. Ely, was not in possession, and had no title, and could therefore convey none ; or if any interest did pass, that is no estoppel. Her husband was in possession under his deed, and Mrs. Ely knew it. Mrs. Ely's deed gives her no remedy by action in case of failure of title, and therefore it estops no one. Mrs. Ely's deed is also void for champerty. V. No one claiming under Mrs. Ely's deed can be a bona fide purchaser, as against her husband or those claiming under him. Mrs. Ely cannot. Neither can her children ; nor Smith, for he knew of D. Ely's deed. Notice of D. Ely's deed is not sufficiently denied. Neither are seisin and possession in Judson alleged, nor that Smith has paid the purchase money. Mrs. Ely paid nothing for the farm ; nor for the subsequently acquired titles or claims. D. Ely possessed it as his, under his deed, and owned it, nor was he disseised by election, or requested to give up possession. And his object in keeping it in others was to defeat creditors. Accordingly, all the deeds that are set up to defeat our debt are void as to that debt. And we, being creditors, can at least take any ground that D. Ely's deed and possession would have entitled him to take, had his wife been a stranger to him.

*J. R. Lawrence,* for the defendant Smith. I. Smith's purchase of the lots was a bona fide purchase, without any intent to delay, hinder, or defraud creditors. David Judson received a large portion of the purchase money from Smith, on his judgments against David Ely. He thereby sanctioned the sale to Smith, and his administrator is now estopped from setting up

Dennison *v.* Ely.

that Smith's purchase was fraudulent. Smith's object and intent was to purchase the lots at a fair price, to secure his own debt and to pay the other debts of David Ely ; and at the time of his purchase he expected to pay all the debts of David Ely. And it was the understanding of all parties, that, if Judson's judgment against David Ely was paid, the plaintiff's testator was to give up the balance of his claim against Ely. It was just and equitable that Ely's debts, where he lived and did business, should be first paid, if only one could be paid ; because Judson, by keeping his claim out of sight, gave Ely a credit he otherwise never could have had. It is a principle of equity, that where one of two innocent persons must suffer by the wrongful act of a third party, the one who, by his negligence, has enabled such third party to do the injury, must himself bear the loss occasioned thereby. ( 9 *Paige,* 52.)

II. Whether the title to these lots was in David Ely alone, or in David Ely and his children, Smith has the title of all and each of them ; for they all conveyed to him. III. Judson, and the plaintiff as his administrator, are estopped from setting up that the deed with warranty from Judson to Mrs. Ely was void, or that it conveyed no title. 1. If the deed from Judson to Mrs. Ely was fraudulent and void as against other creditors of David Ely, yet Judson, although he be a creditor, cannot set up that fraud ; for he was a party to the deed. (*Osborn* v. *Moss,* 7 *John.* 161.  *Hawes* v. *Leadu, Cro. Jac.* 270.  4 *Mass. Rep.* 354.  9 *Pick.* 93.  20 *Id.* 247.  12 *Id.* 89.) 2. If Judson's deed to Mrs. Ely conveyed no title to her, then the heirs of Mrs. Ely can recover of the plaintiff as administrator of Judson, on the covenant of warranty contained in that deed. This shows the impropriety and fallacy of permitting Judson to avoid his own deed in this suit, merely to turn the heirs of Mrs Ely, the grantee, around to their action against his representatives, upon the covenant of warranty. IV. The deed from Judson to Mrs. Ely was a valid deed ; for after his first conveyance to David Ely of these two lots, he received another conveyance of an outstanding title, which conveyance was procured by the separate individual patrimonial property of Mrs. Ely ; and she

having died, a life estate only remained in David Ely, and the remainder in his heirs. David Ely being cognizant of the deed from Judson to Mrs. Ely, could not set up his former title. Judson surely cannot take advantage of his having given a previous deed, for the purpose of defeating his second deed, and thereby reap a benefit from his own wrong, if it be a wrong. V. Whether the amount agreed to be paid to the heirs of Mrs. Ely was legally due to them, or not, Smith supposed, and honestly believed, they were entitled to it; and if he paid them without any intent to defeat, hinder, or defraud the creditors of David Ely, it will not affect the validity of his deed, although it should turn out that he was mistaken. All fraudulent intent is positively denied by Smith in his answer. The heirs would not convey their title without payment. Smith would not buy unless he obtained the title of all parties to the land. David Ely recognized the claims of the heirs, and consented to the payment. The heirs allowed David Ely to receive, for his life estate, more than he was entitled to, upon the principle of life annuities, and all that money went to pay Ely's debts.

*O. Hastings*, for the other defendants. I. The conveyance of the 22d of May, 1840, from the defendant David Ely to the defendant William W. Ely, was not fraudulent and void as against the creditors of the former. But if it was so, it is wholly immaterial, and can have no influence in the decision of this cause. II. The sale of the farm in question, by these defendants, to the defendant A. Smith in his lifetime, was valid, and not fraudulent and void as against the creditors of the defendant David Ely. 1. The answers are called for on oath, and they deny the fraud charged in the bill. 2. The circumstances stated in the answers of these defendants, may be considered as responsive to the call in the bill for statements of the circumstances and conversations which led to the sale, and are strongly corroborative of the denials of fraud contained in the answers. III. The deed of the 18th of August, 1819, from David Judson, deceased, is proved, by the concession of the parties, to have conveyed no title to the farm in question, to

Dennison *v.* Ely.

the defendant David Ely.    IV.  The deed of the 2d of October, 1823, from the deceased to Mrs. Ely, was valid; and on her death, in 1826, this inheritance in the lands in question descended to her children, subject to the life estate of the defendant, David Ely.   And unless the lands were paid for with the property of David Ely, the title of the children cannot be impeached. V.  The proofs show that the lands in question were paid for with the property of Mrs. Ely.   The answers assert this, and are, in this respect, responsive to the bill.   The deed from the deceased to Mrs. Ely admits this in express terms, and the proof introduced in opposition to it is insufficient to counterbalance the admission contained in the deed.   VI.  By the warranty contained in the deed from the deceased to Mrs. Ely, he was estopped in his lifetime, and his representatives are equally estopped since his death, from setting up any claim to the premises in question.   VII.  The circumstances of the settlement between David Judson 2d, as the agent of the deceased, and the defendant David Ely, in connection with the purchase by the original defendant Azariah Smith, and the distribution of the proceeds of the purchase, form an equitable estoppel, which in this court will be effectual to bar the plaintiff's claim, either to the lands in question, or to the proceeds thereof.   VIII.  The gift by David Ely of the trifling articles of personal property, mentioned in the answer, to William W. Ely, was not fraudulent; and forms no ground for relief against the latter.

GRIDLEY, J.   One of the most important questions involved in this controversy, is whether the deed to Mrs. Ely, of October, 1823, was valid, and actually conveyed the farm to her; and if it did not, whether the grantor, David Judson, and the plaintiff, who represents him, are not estopped from denying that it did.

I.  Did the deed executed to Mrs. Ely actually convey to her the title to the premises in question?   (1.)  It is said by the counsel for the plaintiff, that by the terms of the deed and the legal construction thereof, the grantor did not profess to convey any thing but his *right* and *title;* which, in fact, was no title

whatever, inasmuch as he had already conveyed it to David Ely, by the deed executed in 1819. The deed in question, by its terms, conveyed to Mrs. Ely, her heirs and assigns, "all the two certain tracts, pieces or parcels of land lying in township number 3, in the 7th range of townships in Phelps and Gorham's purchase, and known as the town of Brighton, in the county of Monroe, and state of New-York, being lots numbers 32 and 40 of the second division, to contain, as by the original survey, 210 acres each, amounting to 420 acres, more or less ; together with all and singular, the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. *And all the estate, right, title, interest, and claim and demand whatever of the said party of the first part, either in law or equity, of, in and to the above bargained premises, with the said hereditaments and appurtenances.* To have and to hold the *said lots or parcels of land,* to the said party of the second part, her heirs and assigns." The grantor, then, for himself, his executors and administrators, covenants to and with the grantee, her heirs and assigns, to warrant and defend the quiet and peaceable possession of the said premises, against the grantor, his heirs, executors and assigns, *and all and every other person or persons claiming the said premises, &c. by, through or under him or them.*

To show that by the above description of the premises conveyed, the grantor merely *released,* or *quit-claimed,* such title as he *might have,* the case of *Allen* v. *Holton,* (20 *Pick.* 488,) is referred to. In that case, the grantor conveyed in the following words : " All my right, title and interest, in and unto the ferry called, &c., and the boat, &c., and all the estate, land and buildings standing thereon, as the same is now occupied and improved by me." And the court held that the deed merely purported to convey such right as the grantor had in the lands, and that the covenants were limited by the grant. And looking to the *words of the grant and descriptions alone,* it cannot be doubted that such was the intent of the parties to the deed. The intent of the grantor was to convey his right

and title to the ferry boat, and to the land and buildings which he occupied and possessed at the time. The case, also, of *Moore* v *Magrath*, (*Cowper*, 9,) holds that where certain specified premises are conveyed by a grant, a sweeping clause of " all the donor's other lands in Ireland," will be rejected as not within the grant. I am also referred to 11 *Pick.* 296, 13 *Id.* 468, 7 *Id.* 169, 2 *Barn. & Adol.* 278. In my judgment, none of the cases warrant the construction sought to be given to this deed. I think it was clearly the intention of the grantor to convey the two lots described in the conveyance, and that the clause relied on by the plaintiff's counsel, was inserted, with no purpose to *limit* the grant, but for the greater caution, to embrace within it any claim and title, equitable as well as legal, which the grantor might have in the land. The *habendum* clause is equally explicit in its description of the land itself, as distinguished from the mere contingent interest which the grantor might happen to have in it. The habendum clause may *enlarge, abridge,* or *explain* the premises in a deed. (*See* 12 *Wend.* 91.) (2.) It is true, that the *legal* title was in David Ely, by virtue of the deed of 1819 ; and he could not be divested of it, unless Mrs. Ely was a *bona fide* purchaser without notice. The cases reported in 2 *John.* 84, 9 *Id.* 55, 4 *Wend.* 474, *Id.* 585, show that the cancellation or re-delivery of a deed, with the view of reinvesting the grantor with the title, will not have that effect. But it was competent for the grantor, by the agreement and consent of David Ely, to convey the same land to a third person, for a valuable consideration ; and David Ely, consenting to, and aiding in, such new conveyance, would be estopped, in equity, from setting up his prior legal title, against the defective title of the second grantee. (*Storrs* v. *Bliss*, 6 *John. Ch. Rep.* 166.) Now, in this case, the fair presumption is, that it was agreed between David Ely and David Judson, that Ely would consent that the two lots in question should be deemed to be restored to Judson, and that the same should be conveyed to Mrs. Ely. The consideration or inducement to this, we do not know. It is not improbable, however, that the lands conveyed to Judson, as the condition of the conveyance

by him to Ely, were the lands of Mrs. Ely. The consideration mentioned in the deed to David Ely, is an *exchange of lands*, and that stated in the deed to Mrs. Ely, is described as " an exchange of lands lying in Huron county, Ohio, being part of the patrimonial estate of the said Priscilla, and one hundred dollars." The consent of David Ely to this conveyance to his wife, and his active agency in effecting it, appear from the fact that the deed is in his hand-writing. And it is quite probable that the deed of 1819, would have been re-delivered or destroyed, had it not embraced, also, other lands than the lots 34 and 40. I perceive no reason why David Ely should be allowed to invalidate a deed made to his wife, when he would be precluded from doing it as against strangers. It is a well established principle, that a married woman is regarded as a feme sole when her separate property is concerned ; and she may go into the court of chancery for the protection of her rights, in relation to her separate estate, against her husband, as well as against a stranger. (17 *John.* 548.) And I have already said that equity would interfere to prevent David Ely from asserting his own legal title, against a third person who had been induced by him to part with his money, for the estate of which he was seeking to deprive him. (*Storrs* v. *Barker*, 6 *John. Ch. Rep.* 166, *and cases there cited.*)

I see no reason, therefore, why a court of equity should not protect the title of Mrs. Ely, in her heirs, against her husband and those claiming under him, if, in truth, her property formed the consideration of the conveyance to her; even if she had notice of her husband's prior deed. But (3.) I am inclined to regard Mrs. Ely as a *bona fide* purchaser, without notice.

*First.* There is no proof of notice to her. (1.) There is not the slightest evidence of *actual notice* to her, of the prior deed to David Ely. (2.) The plaintiff's counsel claims to have shown David Ely to have been in the *possession* and *occupation* of these premises, at the date of the deed to Mrs. Ely ; thus charging her with constructive notice of whatever title he possessed. The witnesses relied on as proving this fact, are Lewis Frick and Culver. I have critically examined the testi-

Dennison *v.* Ely.

mony of these witnesses, and it falls short of establishing the fact that David Ely lived upon or occupied the land in question. In fact, the deed to Mrs. Ely describes both grantor and grantee as residents of Fairfield in Connecticut, at the time.

*Secondly.* As to the consideration being the patrimonial lands of Mrs. Ely. (1.) It has been solemnly recited by the grantor in the deed; and it is said in *Cowen & Hill's Notes to Phil Ev.* 1237, that the *general rule* is "that a recital in a deed estops the party executing it and those claiming under him, by title subsequent." But this relates to the statement of the receipt of a consideration; and it is not to be denied that in an ordinary case of a statement in a deed, of the receipt of a pecuniary consideration, parol evidence may be received to contradict the statement in the deed. This may be done in a suit for the purchase money, (*Cowen & Hill's Notes,* 217, 1441;) and also on a question of damages upon a covenant in the deed; and on a question as to who received the money; and perhaps, in some other cases. (*Cowen & Hill's Notes,* 216, 218, 217, 1441, 1442.) But, as between parties and privies, (there being no fraud charged,) "it is not allowable to inquire into the consideration, for the purpose of showing an interest different from, or additional to, the interest expressed in the operative words of the conveyance, or to *defeat the deed,* or to change its legal effect, in the creation or modification of the estate." (*See* 2 *Cowen & Hill's Notes,* 1444, *and cases there cited.*)(*a*) It is said, also, that when a note expresses a *specific consideration,* it is not competent to prove one inconsistent with the one expressed. (*See Idem,* 1460, *and cases there cited.*) So, it has been held that a party is estopped, by the recital of a fact, which must have been within his own knowledge. (*See cases cited in Cowen & Hill's Notes,* 1237.) In this case the recital is of a specific consideration moving from a particular person; and it is stated to be of such a nature and description that if it be

(*a*) As between the parties to a conveyance, where a mere nominal consideration is expressed in such conveyance for the purpose of supporting it, a court ought not to allow proof to be given of the non-payment of any consideration, in order to destroy the deed. (*Meriam* v. *Harsen,* 2 *Barb. Ch. Rep.* 232.)

true, certain important rights would be created in favor of the grantee, which the deed would not otherwise secure to her, in the event that the title under the deed should be drawn in question by a creditor of David Ely. I am, therefore, strongly inclined to think that the grantor should not be allowed to contradict this fact thus deliberately admitted, and obviously with the view of conveying to the grantee all the advantages arising to her from the fact of the consideration moving directly from her. But, whether the recital in question be held to estop the grantor, as to the fact recited, or not, it is quite certain that the evidence to controvert it, should be of such a character as clearly to disprove it. Now, I do not propose to go into an analysis of the testimony produced, as to the amount and disposition of the lands of Mrs. Ely in Ohio. If she and her husband had conveyed these lands under an agreement that the proceeds should be thereafter applied for his benefit, then, though the lands which were received by David Judson in exchange, were conveyed by David Ely, the fact recited might, nevertheless, be substantially true. This hypothesis is corroborated by proof of a portion of the lands being conveyed to the husband. It will be remembered that the deed to David Ely expresses the consideration to be an exchange of lands. It is, therefore, not improbable that the lands conveyed by David Ely were the very lands which were derived from the patrimonial estate of his wife, or, that such lands were purchased with the proceeds of such estate. There can be no other reasonable explanation given of the conveyance to Mrs. Ely, of the lands in question. The case might be open to the suspicion that the conveyance was made to defraud creditors; but no such ground is assumed in the bill, nor is there any evidence to show that David Ely was, at the time, embarrassed; or that he owed a dollar to any person, except to the grantor; who would not be likely to be a party to a conspiracy to defraud himself. On the contrary, it is inferrible, from the evidence, that David Ely was, at the time, a man of very considerable property. I am, therefore, of the opinion, that the complainant has not disproved the admission in the deed that the actual advance of the patrimonial

estate of Mrs. Ely furnished, directly or indirectly, the consideration for the conveyance. (4.) But Smith purchased the premises and agreed to pay for them, on the assumption that the deed of 1823 conveyed a good title to Mrs. Ely. It is, therefore, proper to inquire what notice he had, that such was the legal effect of that deed. He found a prior deed, it is true, but he found the latter one on record and the other not; nor had he any evidence that Mrs. Ely had notice of the prior deed, when she took the conveyance in question; much less any such notice as is required to break in upon the registry acts. He, moreover, had the assurance of the grantor David Judson, under his hand and seal, that Mrs. Ely advanced the consideration out of her own property, and that David Ely was consenting to the sale to his wife, by the fact that the deed was in his own hand-writing. If, then, Smith purchased, relying on the truth of this recital, as to the consideration, the grantor would be estopped from denying it, upon the well settled principle relating to an estoppel *in pais.* (*Cowen & Hill's Notes,* 200 *et seq. Idem,* 1237.)

II. I come now to the other branch of the question proposed to be considered; which is, whether the plaintiff is not estopped from alleging that the deed to Mrs. Ely conveyed no title.

(1.) In my judgment the *grantor is estopped.* He conveyed, as I have already said, the *premises* in question, *to* her, and not merely his *right* and *title* to them. By this, I mean, that he *professed to convey* the premises, and that the deed described the premises, with apt words to pass the title in them to the grantee, and he acknowledged a consideration moving from *her.* In addition to this, he covenanted to *warrant the premises against all persons* claiming under, by, or through himself, and against his own acts. Now, can he set up a title as *against her,* derived under the prior deed to David Ely? Could he have purchased the premises and taken a deed from David Ely and then brought ejectment against Mrs. Ely, or against her heirs, after her death? He, doubtless, might purchase the life estate of David Ely, but could he purchase the *estate of inheritance* and enforce it against her children or their grantees?

Dennison *v.* Ely.

Can he do this in the face of his warranty against this very deed under which the claim is made? If he can, then I have misunderstood the doctrine of estoppel. It is said that this warranty against his own acts and the acts of those claiming under him, would not prevent him from acquiring an independent title, subsequently, and enforcing the same against his grantee, (13 *Pick.* 116;) and that such newly-acquired title would enure to David Ely, by virtue of another well settled rule. (14 *John.* 194.) To this there are two answers. 1. It does not appear that any such newly-acquired title was the true one; and 2. The estoppel is against the right of setting up the *prior deed* in hostility to Mrs. Ely's, when that prior deed is all the evidence produced of a superior antagonist title to hers. Much refined and ingenious reasoning has been employed to resist the application of the principle of estoppel to this case; but, it seems to me, that the doctrine is directly applicable to it; and that it would be in violation of the plainest principles of the theory of estoppel, to allow the grantor to defeat the title he professed to convey to Mrs. Ely, by and under the paramount title of David Ely, created by his own prior deed, against which he executed to her, her heirs and assigns, a covenant of warranty.

(2.) I am also of the opinion that if the *grantor* is estopped, the plaintiff, his administrator with the will annexed, is also estopped. Indeed, the case of *Osborne* v. *Moss,* (7 *John.* 161,) is an express authority for this position. It is supposed, however, by the plaintiff's counsel, that the case of *Babcock* v. *Booth,* (2 *Hill,* 181,) has established a different rule. In that case, the administrator was permitted to recover against a fraudulent purchaser, for the conversion of a yoke of oxen, of which the intestate died possessed, in a case where *the whole assets of the intestate, including the oxen, were insufficient to pay his debts.* This decision was placed upon the ground that the sale was void as to creditors, and that formerly a creditor had a remedy against a purchaser taking the property of the deceased, under such circumstances, by charging him as executor *de son tort;* and that the revised statutes have abolished this remedy, and

given, instead thereof, the proper action to the executor or administrator of the deceased.   It will be seen, therefore, that the case at bar differs, in many essential particulars, from the case of *Babcock* v. *Booth.*   There is wanting, here, the indispensable requisite of proof that there is a deficiency of assets to pay creditors.   There is no evidence that David Judson left any creditors, and there *is* evidence that shortly before his death he received several thousand dollars from David Ely.   Again ; the subject matter of the alleged fraudulent sale, is *real estate,* to which the doctrine of the revised statutes (2 *R. S.* 449, § 17,) has no application.   The creditors of David Judson deceased, if there be any, are left to take such remedies, to avoid the sale in question, as the law has provided for them.   The plaintiff not falling within the exception, is subject to the general rule ; which this same case of *Babcock* v. *Booth,* (2 *Hill,* 183,) declares to be, " that an executor or administrator can only maintain such claim as the testator or intestate might have successfully adopted while living."   Indeed, so strenuously do the courts adhere to this rule, that an assignee for the very purpose of paying creditors, and who, therefore, represents the creditors more perfectly than any administrator can do, can assert no right to property conveyed by the assignor in fraud of creditors, which the assignor himself would be estopped from asserting. This point is expressly decided in *Brownell* v. *Curtis,* (10 *Paige,* 218.)

For these reasons, it must be assumed, as between the parties to this suit, that when Smith purchased the farm in question it was owned by the children and heirs of Mrs. Ely, subject to the life estate of David Ely, as tenant by the curtesy.   It matters not to the plaintiff, that these heirs consented that the creditors of David Ely should receive a larger portion of the purchase price, than his right, as tenant by the curtesy, would entitle him to receive.   Nor can he complain that David Ely's portion of the purchase money was paid to other creditors than himself ; for the election to prefer one creditor to another, is the *right* of the debtor.   It is argued, however, that the farm was purchased for a sum far below its value, and that the purchase

was, for that reason, fraudulent; and that at all events, Smith should account for the excess. If I am right in the conclusion to which I have arrived, as to the interest of the heirs of Mrs. Ely in the farm, it will follow that this remark can apply only to the interest of David Ely in the premises. And I think that it will not be denied that the creditors of David Ely have received more than his life estate was worth, even if the land were appraised at $50 per acre. But, upon an examination of the conflicting testimony on the question of value, I cannot say that the farm was sold too low. It would be manifestly wrong to estimate the whole farm of 420 acres, at the price per acre, that would be paid for a comparatively small and more valuable part. I dismiss this part of the case, by a reference to the views of the chancellor, expressed upon a case somewhat similar, in *Grant* v. *Holmes*, (8 *Paige*, 259.)

The only remaining question respects the right of the plaintiff to reach, by this bill, the unpaid part of the note held by the deceased daughter of Mr. Ely, at the time of her death. If there had been no provision in the contract, respecting this fund, and she had, herself, made no disposition of it, it would have gone to her administrator, to be applied, first, to pay any debt she might have owed at her decease, and the residue would have been paid to her father, under the statute of distributions. But the agreement for the sale of the farm, controlled the disposition of this fund. When she sold her interest in the land in question, to the defendant Smith, she had a right to provide that the whole consideration, or any part of it, should be paid to her brothers and sisters, or that it might be so paid, on the happening of any contingency, as, of her marriage, or death. She had a perfect right, also, to dispose of this fund, by will, to her sisters; and it would not be a case where fraud against the creditors of David Ely could be predicated of the transaction, even if it were conceded that the object was to place it where his creditors could not reach it. It is every day's practice for a father so to dispose of his property by will, that the creditors of an insolvent or profligate child cannot reach it. So, in this case, Miss Ely could have disposed of this fund by

will, (had there been no previous disposition of it,) and I think that she might agree that any part of the fund, not paid at her death, should be paid to her sisters.    The fund never passed to her father, and therefore, his creditor has no more right to it than if the deceased owner of the note, had, on her death-bed, delivered the note in question, as a gift, to the persons who will now enjoy it, under the original agreement of the parties.

No claim was made, on the argument, nor can there be successfully, to reach the small amount of property given, years ago, by David Ely to one of his sons;' and the plaintiff not having discovered any property or equitable rights of the judgment debtor, which can be reached by this bill, it must be dismissed; but as the plaintiff is an administrator, and had some probable ground to file the bill, so far as respects the proceeds of the farm, it is dismissed without costs.    (1 *Paige*, 472.)

