## SUPREME COURT.

The President, Directors and Company of the Bank of Whitehall agt. Weed and Smith.

S., being the owner of real estate, several judgments were obtained against him (with others) in 1843 and 1844.  W. was sheriff in 1843 and T. in 1844, and H. was deputy under both of them.  Executions were issued on the judgments, some in 1843 and some in 1844, which were all paid but two, except the sheriff's fees thereon, some of which were not paid.  There were other subsequent liens, and S. had subsequently conveyed his real estate for full value.  In 1852, the deputy sold the lands of S. as deputy of the late sheriff W., and claimed to apply the surplus, after paying the two executions, in payment of his fees on the other executions.  *Held*, that the sheriff's fees on the other executions could not be retained out of the surplus.

After the judgments were paid to the plaintiffs or their attorneys, the vitality of the executions ceased, and the fees of the sheriff, being a mere incident to the judgments, was not a lien upon the real estate of the judgment debtor, nor could that be sold to pay them.

Knickerbocker vs. Shipherd (3 *Cow*, 383), so far as applicable to this case overruled.

*It seems*, if he could have retained the surplus to pay the unpaid fees on executions in his hands, as deputy of W., he could not have done so as to the fees on the executions in his hands as deputy of T., unless the fees had been a lien upon the land.

When a former sheriff returned that he had property on hand for want of buyers, *it seems* it is irregular to issue a *renditioni exponas*, to the new sheriff.  Such writ is but a branch of the *fi. fa.*

On a writ of *renditioni exponas*, issued on a return to a *fi. fa.* that he has levied upon sufficient goods to make the judgment, the sheriff is bound to make the judgment out of those goods.

Whether in a suit against him, he may show the property was of less value than the amount of the judgment, *quere?*

*Essex Special Term, March* 1853.  The facts are sufficiently stated in the opinion of the court.

> O. Kellogg, *for Plaintiffs and the grantees of the Defendant Smith.*
>
> J. F. Havens, *for Wilder and Howe*

Hand, Justice.—This is a question of the disposition of a surplus of $353·10, now in the hands of Ammi Howe, arising on the sale of the lands of the defendant Smith.  A reference was

ordered to take proofs and ascertain who was entitled to the surplus, and the question now comes up on that testimony and report.

Wilder was sheriff of the county of Essex during the years 1841, 1842 and 1843, and Howe was his deputy. Trimble succeeded Wilder, and was sheriff during the years 1844, 1845 and 1846, and Howe was also his deputy during those years. E. Pearson obtained a judgment against the defendant Smith, on the 9th of August 1842, on which execution was delivered to Howe, as deputy of Wilder, October 4th, 1842, with directions to collect $189·21 and interest. On the 10th of January 1843, the Essex County Bank recovered a judgment against Smith, Weed, and one Mills, which execution was delivered on the 14th January 1843, to another deputy of Wilder, with directions to levy $167·40. On the 12th of April 1852, Howe having in his hands these executions and several others hereinafter specified, advertised certain lands to be sold. The notice of the sale began thus: " By virtue of several executions," &c., and was signed " A. Wilder, late sheriff, by A. Howe, late deputy;" and the certificate of sale was signed in the same way. On the 29th day of May 1852, he sold for the sum of $1000, and on the 5th of June 1852 a certificate of sale was given, stating that the sale took place by virtue of the two executions above described. Proof was introduced before the referee, under objection, to show that this statement that the sale was upon two executions and not upon several, was incorrect, and was made in consequence of advice given to Howe that such recital was unimportant. The surplus now in question arose on that sale, after paying those executions; and of that surplus, the referee finds that $38·09 is applicable to sheriff's fees on other executions in the hands of Howe, as deputy of Wilder; and $74·11 to sheriff's fees on other executions in the hands of Howe, as deputy of Trimble. And the balance, $241·90, is applicable to the judgment of the plaintiffs. That judgment was for $1573·35, and was perfected August 27th, 1844; and the execution delivered to the then sheriff, on the 18th of December 1851. And so much of it as is not paid by application of the surplus, is a lien upon other lands subsequently conveyed by Smith.

Howe, though objected to, was admitted by the referee as a witness in favor of the claim for sheriff's fees; and I am inclined to think that decision correct.

I do not find that Trimble has interposed any claim, or appeared in the case at all, or had notice. The deputy, as such, has no claim for fees. Parties in such cases deal with the sheriff, who alone is responsible for the execution of the process (Tuttle vs. Love, 7 *J. R.* 470; Paddock vs. Cameron, 8 *Cow.* 212; Colvin vs. Holbrook, 2 *Comst.* 126).

If parol evidence is admissible for that purpose, I am inclined to think the testimony sufficient to explain the recital in the certificate; but the competency of such evidence is very doubtful. The court has permitted an amendment of the certificate for the purpose of protecting the officer.

It is unnecessary to notice those claims for fees which were disallowed by the referee; he was undoubtedly right in rejecting them. But a brief examination of each of the other cases, will be the most satisfactory manner of ascertaining their merits.

On the 4th of March 1843, one Ely recovered a judgment against Smith, Harris and Hay, for $652·72, on which a *renditioni exponas* was issued and delivered to Howe, as deputy of Trimble, on the 9th day of January 1844, and the referee allowed $16·98, as sheriff's fees thereon. On the writ of *renditioni exponas*, is the following endorsement:

"Made on the within, February the 15th, 1844, six hundred and ninety-five dollars in full of this execution.

C. A. Trimble, sheriff, by A. Howe, deputy."

The sum specified did not exceed the damages, costs and interest. Whether any thing had otherwise been paid does not appear. Howe testified that no part of the fees on the executions upon which fees are claimed, were "paid to me, to my knowledge or recollection." But his return is evidence that the execution was satisfied in full (Townsend vs. Olin, 5 *Wend.* 209; 2 *Cow. & Hill's Notes*, 1090–1; Doty vs. Turner, 8 *J. R.* 18; Denton vs. Livingston, 9 *John. R.* 98; *Watson on Sheriffs*, 72; Gardner vs. Horner, 8 *Mass.* 325). The return is parcel of the record (2 *Saund. R.* 344, *n.* 2). Again, the writ on which fees are claimed is a *venditioni exponas*, and it recited that an ex-

Bank of Whitehall agt. Weed and Smith.

ecution had been issued, and on the 19th day of September 1843, a return was made thereto, that the sheriff had seized sufficient goods and chattels to satisfy it, which remained on hand unsold for want of buyers. After that levy and return, the judgment, *prima facie* at least, was no longer a lien on real estate. The sheriff was bound to make the judgment out of those goods (Clark vs. Withers, 2 *Ld. Raymond*, 1074–5; Cameron vs. Reynolds, *Cowp.* 406; Mildmay vs. Smith, 2 *Saund. R.* 343; *id.* 47, *notes* 2 *and a, b, c;* Jacobs vs. Humphrey, 2 *Cr. & M.* 413; and see Ledyard vs. Buckle, 5 *Hill*, 572). Perhaps in this state the sheriff is not estopped by his return of the value of the goods on hand from showing they were in truth of less value (Denton vs. Livingston, 9 *J. R.* 98; and see Remmet vs. Lawrence, 15 *Q. B.* 1004, *S. C.* 1 *Eng. L. and Eq. R.* 260, *and note;* Dezell vs. Odell, 3 *Hill*, 215). Such a rule, however, would be embarrassing where goods to the amount of a portion of the execution had been levied upon, and the execution so returned, and a *vend. exponas* and *fi. fa.* for the residue have been issued. However there is no evidence in this case of a deficiency. It may be questionable whether Trimble could ever have claimed fees on this writ, or execute it; it being irregular, as it seems, to issue a writ of *venditioni exponas* to the new sheriff, as the property was in the custody of the old one (1 *Burr. Pr.* 305). The *venditioni exponas* is but a branch of the *fi. fa.* (Hughes vs. Rees, 4 *M. & W.* 468).

· The referee allowed $13·68 as fees on a *venditioni exponas* issued to Wilder, in The People ex rel. Kellogg et al. vs. Smith, Harris and Hay. The writ recites the fi. fa. and a return thereon that the sheriff had taken goods and chattels of the defendants to the value of the debt and damages, which remained unsold for want of buyers. The effect of which, to exonerate the real estate of defendants, has already been considered. Besides, Wilson, the assignee of the judgment, swears positively, that it has been paid and satisfied in full, and nothing is due thereon to his knowledge. Howe's testimony does not conflict with this statement. It was perfectly competent for the defendants to pay the fees to the plaintiffs or their attorney, without the knowledge or consent of the sheriff.

The sum of $24·47, were allowed on a fi. fa. issued on a judgment perfected in May, 1843, in the case of The People ex rel. Bank of Whitehall vs. Harris, Smith and Hay, delivered to Howe, as deputy of Trimble, on the 15th day of January 1844. One of the defendants swears it has been paid in full, except sheriff's fees, of which he knows nothing. There is, therefore, no proof that the sheriff's fees, whatever they were, are paid.

The execution in favor of Agan vs. Mills and others, was issued to Wilder, and the sum allowed for fees is $24·41. But Mills swears positively that the judgment has been paid and satisfied in full; that it was paid to plaintiffs' attorney, and nothing is due to his knowledge; and this does not conflict with the testimony of Howe or Clough; on the contrary that of the latter is confirmatory.

Pearson, the plaintiff and attorney in two judgments, Pearson vs, Harris, Smith and Hay, and same vs. Smith, Hay and Andrews, swears they are paid and satisfied in full, and that nothing is due thereon to his knowledge. The executions upon both of them were issued to Trimble and delivered to the deputy, one in January and the other in October 1844, and the referee allowed $14·30 as sheriff's fees. There is no evidence whatever to contradict the proof of full payment to the plaintiff.

The referee allowed $12·70, upon the execution in favor of Boyd and Welch vs. Smith, Treadway and Treadway, perfected in September 1844, and $5·66 on that of Austin vs. Weed and Smith, perfected in October 1844, both of which were issued to Trimble and delivered to his deputy in 1844. From the testimony of the attorney and of Howe, I think the sheriff's fees were not paid upon these two executions. The attorney says he did not receive the fees when he received the damages and costs, and there was a general understanding between him and Howe, that the attorney might receive the damages and costs on executions against Weed, and that Howe should look to defendants for his fees.

If I am right upon the facts, the fees on three executions only, amounting to $38·77, were unpaid, and those were issued to Trimble. Admitting Trimble is properly before the court, can he claim payment of fees on the executions in his hands, out

of the sale 'made by his predecessor? The sale was by Wilder alone. Howe did not sign the notice or certificate of sale, or profess to sell, as the deputy of Trimble. If the new sheriff can claim fees in such a case, it must be on the ground that the fees before sale, were a lien upon the land and afterwards a lien on the surplus. The two sheriffs act independently and have nothing to do with each other in relation to their fees on distinct process, served by them respectively.

It is very doubtful whether a court can, summarily, order money in the hands of a third person, to be paid to a sheriff who has an execution against the person to whom it belongs. Application for an order that the late sheriff pay a surplus belonging to defendant to the present sheriff, having a fi. fa. against defendant, was refused, although a strong case was shown (Fieldhouse vs. Croft, 4 *East*, 510; and see Knight vs. Criddle, 9 *id.* 48; Willows vs. Ball, 5 *B. & P.* 376). It is different where the claimant had a lien on the property sold, and there is no dispute (Williams vs. Rogers, 5 *J. R.* 163; Van Nest vs. Yeomans, 1 *Wend.* 87; Averill vs. Loucks, 6 *Barb.* 670; 7 *Wend.* 263; Ball vs. Ryers, 3 *Caines*, 84). Mr. Justice COWEN was, perhaps, inclined to carry the rule further in The People vs. Ulster Com. Pleas (18 *Wend.* 628). But the cases upon which he relied, and the one he was deciding, arose upon the sale of realty, except Armistead vs. Philpot (*Doug.* 231), which was expressly overruled by the above cases in *East* and *Bosanquet & Puller.* In Armistead vs. Philpot, the sheriff having collected money for the defendant, which he had in his hands, the court ordered it to apply on an execution against the defendant in his hands (see Turner vs. Tendall, 1 *Cranch*, 117). Perhaps that could now be done under the Revised Statutes (2 *R. S.* 366); and the Code has also provided a mode of reaching the money (§ 293–4, 297). But if money in the hands of a third person can be reached by an order of the court, no such order would be made as against those having a lien upon the land out of which the fund accrued, and in favor of general creditors; and the sheriff, after the judgments were paid, was at most, nothing more. His fees were not a lien upon the land. They are a mere incident to the judgment, and when that is paid, the vitality of the execution ceases, ex-

cept, perhaps, in some cases of fraud (Jackson vs. Anderson, 4 *Wend.* 474). The remedy of the sheriff then, is against the attorney or the plaintiff. Perhaps an action will lie upon the express promise of the defendant in the execution; but courts are very jealous in such cases (Reed vs. Pruyn, 7 *J. R.* 426; Sherman vs. Boyce, 15 *id.* 443; Mills vs. Young, 23 *Wend.* 315; Bigelow vs. Provost, 5 *Hill*, 566).

Another objection to the allowance upon the two executions, one in favor of Boyd vs. Welch, and the other of Austin, is that both of the judgments, as I infer from the executions and the bill of particulars, were junior to that of the plaintiffs.

The case of Knickerbacker vs. Shipherd (3 *Cow.* 383), would seem to favor the position taken by the counsel for the plaintiff, as to the fees on the execution (People ex rel. Bank of Whitehall vs. Harris et al.). The report of that case is very brief, but probably the personal property was lost by the delay of the plaintiff, and perhaps the sheriff or the prior plaintiffs were in some way prejudiced; if not, the case can not be law. It is directly opposed in principle to Jackson vs. Anderson, subsequently decided, which was an action of ejectment, argued by able counsel and fully considered. That decision may be applied with justice in this case. The judgment on which these executions were issued, were probably all paid eight or nine years before the sale, and the lands of the debtors since conveyed for their full value. It would be a great hardship to allow a running account for sheriff's fees now to be a lien upon the lands or the avails thereof. The whole of the surplus must be paid over to the plaintiffs in this cause, which, after deducting the expense of these proceedings, they must apply upon their judgment. The reference, under the circumstances, was probably necessary before the money could be paid over with safety.

Ordered accordingly.