[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 37 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 39 
In general a contract for the building of a vessel or other thing not yet in esse, does not vest any property in the party for whom it is agreed to be constructed during the progress of the work, nor until it is finished and delivered, or at least ready for delivery and approved by such party. All the authorities agree in this. (Towers v. Osborne, 1 Stra. 506;Mucklow v. Mangles, 1 Taunt. 318; Johnson v. Hunt, 11Wend. 139; Crookshank v. Burrill, 18 John. 58; Sewall
v. Fitch, 8 Cow. 215; Mixer v. Howarth, 21 Pick. 205.) And the law is the same though it be agreed that payment shall be made to the builder during the progress of the work, and such payments are made accordingly. In Mucklow v. Mangles, which arose out of a contract for building a barge, the whole price was paid in advance, the vessel was built and the name of the person who contracted for it was painted on the stern, yet it was held that the title remained in the builder. In Merritt v.Johnson, (7 John. 473,) where a sloop was agreed to be built and one-third of the price was to be paid when one-third of the work was done, two-thirds when two-thirds were done, and the balance when it was completed, and before it was finished it was sold on execution against the builder after more than a third had been done *Page 41 
and more than that proportion of the price had been paid, the court decided that the vessel was the property of the builder and not of the person who engaged it to be constructed.
Where during the course of the transaction the vessel or other thing agreed to be built is identified and appropriated so that the mechanic would be bound to complete and deliver that particular thing, and could not without violating his contract substitute another similar article though otherwise corresponding with the agreement, there would seem to be more reason for holding that the property was transferred; still it has never been held that this was enough to pass the title. In Laidler v.Burlinson, (2 Mees. Welsb. 602,) the vessel was about one-third built when the contract was made. The builder and owners agreed to finish that particular vessel in a manner specially agreed upon for a price which was the equivalent for the finished vessel. Before it was completed the builder became bankrupt, and the possession passed into the hands of his assignee. The court of exchequer held the true construction of the contract to be that the title was to pass when the ship was completed and not before. The parties only agreed to buy a particular ship when complete, and although the builder could not comply with the contract by delivering another ship, still it was considered an executory contract merely. In Atkinson v.Bell, (8 Barn. Cress. 277,) the same principle was held in respect to a contract for making spinning machinery, and inClark v. Spence, (4 Adolph. El. 448,) which is the case principally relied on by the defendants, it was admitted by the court that the appropriation of the particular ship to the contract, then in question, by the approval of the materials and labor by the superintendent, did not of itself vest the property in the purchaser until the whole thing contracted for had been completed.
In the case before us, it cannot be denied but that the barge, as fast as its several parts were finished with the approval of the superintendent, became specifically appropriated to the fulfilment of this contract, so that Bridger Company could not have fulfilled their agreement with the defendants in any other *Page 42 
way than by completing and delivering that identical boat. This results from the consideration that the superintendent could not be called upon to inspect and approve of the work and materials of another barge, after having performed that duty as to one; so that the contract would be broken up unless it applied itself to this vessel. But it is clear that this circumstance alone does not operate to transfer the title. The precise question in this case is whether the concurrence of both particulars — the payment of parts of the price at specified stages of the work, and the intervention of a superintendent to inspect and approve of the work and materials — produces a result which neither of them separately would effect. It is no doubt competent for the parties to agree when and upon what conditions the property in the subject of such a contract shall vest in the prospective owner. The present question is therefore simply one of construction. The inquiry is whether the parties intended by the provisions which they have inserted in their contract, that as soon as the first payment had become payable and had been paid, the property in the unfinished barge should vest in the defendants, so that thereafter it should be at their risk as to casualties, and be liable for their debts, and pass to their representatives in case of their death. Such an agreement would be lawful if made, and the doubt only is whether the parties have so contracted.
The courts in England, under contracts in all material respects like this, have held that the title passed. In Woods v.Russell, (5 Barn. Ald. 942,) the question came before the court of king's bench, and Abbot, C.J. distinctly declared his opinion that the payment of the instalments under such a contract vested the property in the ship in the party for whom it was to have been constructed. But there was another feature in the case upon which it was finally decided. The builder had signed a certificate for the purpose of enabling the other party to procure the vessel to be registered in his name and it was so registered accordingly while it was yet unfinished and before the question arose. The court held that the legal effect of signing the certificate for the purpose of procuring the registry was, *Page 43 
from the time the registry was complete, to vest the general property in the party contracting to have the ship built. This case was decided in 1822, and was the first announcement of the principle upon which the defendants' counsel rely in the English courts. The case of Clark v. Spence was decided in 1836. It arose out of a contract for building a vessel, which contained both the features of superintendence and of payments according to specific stages of the work, as in Woods v. Russell, and as in the contract now before the court. The court of king's bench was clearly of opinion, that as fast as the different parts of the vessel were approved and added to the fabric they became appropriated to the purchaser by way of contract, and that when the last of them were so added and the vessel was thereby completed it vested in the purchaser. The court conceded that by the general rules of law, until the last of the necessary materials was added the thing contracted for was not in existence; and they said they had not been able to find any authority for holding that while the article did not exist as a whole and was incomplete, the general property in such parts of it had been from time to time constructed should vest in the purchaser, except what was said in the case of Woods v.Russell; and that was admitted to be a dictum merely, and not the point on which the case was decided. The court however decided upon the authority of that case, though with some hesitation, as they said, that the rights of the parties in the case before it, after the making of the first payment, were the same as if so much of the vessel as was then constructed had originally belonged to the party contracting for its construction and had been delivered by him to the builder to be added to and finished; and they said it would follow that every plank and article subsequently added would, as added, become the property of the party contracting with the builder. The dictum in Woods
v. Russell was incidentally referred to as the law inAtkinson v. Bell, (8 Barn. Cress. 277,) and the doctrine there stated, and confirmed in Clark v. Spence, was assumed to be correct in Laidler v. Burlinson before referred to. It has also been generally adopted by systematic writers in *Page 44 
treatises published or revised since the decision of Clark v.Spence, that case and Woods v. Russell being always referred to as the authority on which it rests. (Story onSales, §§ 315, 316; Chit. on Cont. 378, 9; Abbot on Ship. 4, 5.)
It is scarcely necessary to say that the English cases since the revolution are not regarded as authority in our courts. Upon disputed doctrines of the common law they are entitled to respectful consideration; but where the question relates to the construction or effect of a written contract they have no greater weight than may be due to the reasons given in their support. Can it then be fairly collected from the provisions of this contract, that the title to the unfinished barge was to be transferred from the builder to the other party upon the making of the first payment, contrary to the principle well settled and generally understood that a contract for the construction of an article not in existence is executory until the thing is finished and ready for delivery? In the first place, I should say that so marked a circumstance would be stated in words of unequivocal import; and would not be left to rest upon construction, if a change of property was really intended. The provision for superintendence by the agent of the intended owner, though it serves to identify and appropriate the article as soon as its construction is commenced, does not, as we have seen, work any change of property. Such would not ordinarily be the intention to be deduced from such a circumstance. Many of the materials of which a vessel is composed are ultimately covered so as to be concealed from the eye when it is finished; and as the safety of life and property is concerned in the soundness and strength of these materials, it is but a reasonable precaution to be taken by one who engages a vessel to be constructed, to ascertain as the work progresses that every thing is staunch and durable; and such a provision, as it seems to me, does not tend to show a design that there shall be a change of property as fast as any materials or work are inspected and approved. It amounts only to an agreement that when the whole is completed the party will receive it in fulfillment *Page 45 
of the contract. The provision for advances at particular stages of the work is a very usual one where an expensive undertaking is contracted for, and it only shows that the party advancing is willing thus to assist the artizan provided that he can see that the work is going on in good faith, so as to afford a reasonable prospect that he will realize the avails of his expenditure in a reasonable period. The argument for the defendants would be somewhat stronger if we could say that the amount to be advanced at the several stages mentioned was understood by the parties to be the price or equivalent for the labor and materials already expended. This by no means appears, but on the contrary there is strong reason to believe, that in this case a considerable portion of the price was to be at all times kept back in order to secure the speedy completion of the contract. When Bridger Co. failed only three thousand dollars of the five thousand had been paid, and they would not be entitled to any more until the barge was finished, and yet it cost only seven hundred dollars to complete it. This renders it improbable that the parties could have intended the sale and purchase of so much as was done at the several stages of the work at which payments were to be made, if indeed such a contract were not in itself so much out of the course of the ordinary conduct of parties as not to be assumed without unequivocal language.
The decision in Clarke v. Spence is placed very much upon the idea, that parties may have contracted in reference to the doctrine announced in Woods v. Russell. That argument can have no force here, but on the contrary the inference to be drawn from our own cases and particularly from Merritt v. Johnson,
would be that the title remained in the builder under such a contract until the completion of the vessel.
The foregoing considerations have led me to the conclusion that the modern English rule is not founded upon sufficient reasons and that it ought not to be followed. The judgment of the supreme court should therefore be reversed and a new trial ordered. *Page 46