## De Wolf *v.* Tupper and others.

*(District Court, S. D. New York. June 11, 1885.)*

PURCHASE OF VESSEL—LIABILITY FOR OUTFIT—AUTHORITY OF MANAGING OWNER—SUPPLIES.

By the terms of the contract under which the defendant T. was to acquire a one-eighth interest in the brig C., then building by one P., the title would not pass to T. until the delivery of the brig, completed according to such contract. Before such delivery, libelant, on the order of P., who was afterwards managing owner, and who informed libelant that T. was a part owner, furnished

1Reported by R. D. & Edward G. Benedict, Esqs., of the New York bar.

an outfit for the vessel, which was charged to the brig and owners, and was delivered to the ship before the title passed to T. The purchase was made without the knowledge of defendant T., who afterwards paid to P. the price of his one-eighth share. T. was afterwards informed. of the purchase, but not that it was made in part on his credit. The evidence left it doubtful whether the price agreed on between P. and T. for the one-eighth interest was intended to cover the outfit. *Held* that, under the circumstances, P. had no authority to bind T. in the purchase of the outfit; that if T. was liable for the outfit it was solely to P., and subject to the state of their private accounts; that for supplies furnished subsequently T. was liable, and a reference as to these was ordered.

In Admiralty.

*Wilcox, Adams & Macklin*, for libelants.

*Jas. K. Hill, Wing & Shondy*, for respondents.

BROWN, J. By the contract under which the defendant Tupper was to acquire a one-eighth interest in the brig Casiopeia, which was building by Captain Pettis, the title would not pass to him, and he would not become a part owner, until the delivery of the brig when completed according to the contract. *Andrews* v. *Durant*, 11 N. Y. 35. By necessary implication, since she was to be complete in her hull and spars, this included the launching of the vessel; and she was not launched until September 26, 1874. In July or August previous, Captain Pettis came to New York and ordered through the libelants the purchase of the necessary outfit for the vessel, including all her standing and running rigging, chains, cables, anchors, etc. These were furnished by the libelants and forwarded in August before the launching of the ship. Captain Pettis, at the time, told the libelants that the defendant Tupper was one of the owners; and they charged the price of the outfit, amounting to some $6,000, to the brig and owners. The purchase, however, was made by the captain on his own responsibility, and without the knowledge of Mr. Tupper at the time, although it was communicated to him afterwards; but he was not informed that the outfit had been procured upon his credit. The libelants afterwards furnished various supplies to the ship until the beginning of 1878, always dealing with Captain Pettis alone, and the account gradually increased until in 1880, when the libel was filed, it amounted to upwards of $15,000, including $6,000 for the outfit in 1874.

Although the libelants were pressing the captain for funds during these several years, the account was suffered to increase, as above stated, without any communication to Mr. Tupper, or any notice that they looked to him for payment of the outfit until April, 1878. The captain, in the mean time, had been acting as managing owner; and the other part owners becoming dissatisfied, a transfer of her management was made in 1877, and Captain Pettis at that time rendered his accounts, showing about $4,500 surplus to the credit of the ship.

The liability of Mr. Tupper for the outfit must rest upon the authority of Captain Pettis to bind him as his agent at the time when the outfit was ordered. In my judgment, no legal authority to charge him as principal at that time existed in Captain Pettis. The

vessel was not then launched. The contract by which he was to acquire the title was not, therefore, completed; the title of the one-eighth had not passed to Mr. Tupper; he was not at the time an owner, and as respects him, Captain Pettis was not yet in the position of a managing owner, authorized to bind another part owner for necessary supplies or equipment. In addition to that, the original outfit of the vessel is a part of her equipment in preparing her for navigation as much as completing her hull. Captain Pettis does not claim any authority to bind Mr. Tupper, other than as ship's husband and managing owner, and the evidence shows that he had no express authority. This was not sufficient at the time when the outfit was purchased by his order, and when it was forwarded and delivered by the libelants.

The dealings between the parties, moreover, leave great doubt whether the price agreed on between Mr. Tupper and Captain Pettis was to include the outfit or not. From the written contract it would appear that the outfit was not included; but that circumstance would not make Mr. Tupper liable to the libelants for the outfit ordered by Captain Pettis, without authority to bind Mr. Tupper. It is certainly remarkable, if the price of the outfit was not included in the original understanding, that for some four years afterwards no demand should ever have been made upon Mr. Tupper for his share of this outfit, in addition to the price of his interest, which he had promptly paid to Captain Pettis; nor any notice given him of his liability therefor either by Captain Pettis or by the libelants. If, however, the price of his one-eighth interest did not, as between him and Captain Pettis, include the outfit, his liability therefor was only to Captain Pettis, and it was therefore subject to the state of the account between them; an important consideration, inasmuch as Captain Pettis is insolvent, and is apparently a large debtor to the ship.

Upon these grounds I must exclude the outfit from the libelants' claim upon Mr. Tupper. The sheathing of the vessel in New York, in November, 1874, was a charge apparently within the scope of the power of Captain Pettis to incur, at the joint expense of the owners. The other items of supplies furnished appear to have been in part made within the apparent authority of Captain Pettis, as captain and managing owner. As respects others, including all loans or drafts of Captain Pettis from other ports upon the libelants here, they are of doubtful authority, and require a detailed examination. If the parties do not agree, the residue of the account, excluding the outfit, must be sent to a commissioner, to take such proof as the parties may offer, in addition to that already taken, both as to the amount due, and as to the validity of the various items, as against absent owners.